Good morning, Your Honors. Zeng Li for Appellants Luis Ramos and Gudiela Sandoval. If it pleases the Court, I'd like to reserve two minutes of my time for rebuttal. Do it? Yes. Okay, keep it on the clock. We'll try to help you. And hopefully the clock will work. Thank you. Your Honors, the first point for reversal of judgment below is that the District Court excluded the FCMAT report and its authenticating witness. And it did so without applying the correct legal standard. Let me be sure I understand. I thought the report was not excluded. I thought it was just Mr. Jovino's, if you will, foundational testimony that was excluded. Did I miss something? It absolutely was excluded, Your Honor. If I could direct your attention to the District Court's ruling on the motion for new trial. It stated that the FCMAT report and the witness was not disclosed. I'm referring to the FCMAT report. Correct. Is that the same thing you're talking about? Yeah, the FCMAT report and the witness that would lay the evidentiary foundation both were excluded because they were not disclosed. Counsel, typically in my trial court experience, exclusion requires someone to offer something. Here is Exhibit 27, objection sustained. Was the FCMAT, what do you say, FCMAT? FCMAT. Did the plaintiffs ever mark the FCMAT as an exhibit and present it to the district judge and offer it into evidence? I believe the record shows that she attempted to offer a portion of the FCMAT report. But there were several revisions of trial exhibit lists. And I think in the final one, that was not. Yes, because I don't see anywhere in the record that somebody said, here's the FCMAT, we're offering it, and the court said sustained. I mean, there was an objection and sustained. I don't see that anybody ever offered the FCMAT report. So I don't see how the district judge excluded it if the district judge never saw it and said, like, for example, ER 1164. I'm just commenting that if you can't get the report in itself, I'd allow you to ask questions about it. I've made a ruling about the witnesses who weren't disclosed, but I don't see anywhere where the judge said, you've offered it, I reject it. Well, Your Honor, authentication is a legal basis for every piece of evidence. If you can't authenticate a piece of documentary evidence, you cannot get it in. Let me ask you this following up on my colleague. This is an evidentiary matter. If the report was not offered and it wasn't excluded, is this even a final order? Can we even consider what you call the exclusion of the FCMAT report? Well, several pieces point to that, point to the fact that it was, Your Honor, particularly when the parties discussed offering poor testimony about the content of the FCMAT report. The district court gave very specific instructions. If you cannot authenticate the report, you can't even talk about, ask about any of the contents of that report. My recollection is that what was in the report was discussed at some length by the other people over there. Was that wrong? I believe that is wrong, Your Honor. It was the existence and the response to that report. The report, Your Honor, is 108 pages. There was barely, there was maybe a one-sentence summary of the purpose of that report, which was an investigation happened, and it existed, and it was presented. And there were responses taken by the school district to that report. That was the extent of the testimony. You know, counsel, I'm still having trouble with the basic premise of your argument. Mr. Iovino was not disclosed. Correct. The judge said, show me good cause, if you have it. There was never any good cause shown. And the judge said, I'm not going to let him testify. And, again, the judge, as I see it, didn't keep out the report, but it was your client's problem if they didn't have anybody else who they disclosed who could authenticate it. But I just don't see that the same as someone offering the report and the judge keeping it out. I just don't think you've laid the building blocks to be able to challenge an exclusion, which I don't see ever occurred. Well, Your Honor, it is when a witness, an authenticating witness, there were two, actually, in there, Jimmy Iovino and Anthony Bridges, both of whom were undisclosed and both of whom were excluded. Trial counsel had no way to present this evidence. The immediate response upon presenting this piece of evidence would have been an objection that it cannot be authenticated. And the trial court, the district court, would have excluded it. So, Mr. Lee, in these questions of admission of evidence, we like to, in fact, we require the trial counsel to give the district court the opportunity to respond and provide grounds for exclusion, which can't happen if trial counsel never moves the admission of the exhibit, which is what happened here, right? Well, even if the particular document itself was not attempted to have been offered at trial, certainly the contents of that report, trial counsel did attempt to introduce. So where in the record was trial counsel attempting to offer portions of the report and the judge not allowing it? I believe it was when trial counsel was asking specific questions of a witness about the presentation of the report in a board meeting. But, Mr. Lee, so I'm looking at, for example, ER 1158, where trial counsel says, I'm not planning on introducing anything in evidence that's not listed as evidence. Your Honor, that was in response to the trial court already giving her instructions that she could only ask about certain things regarding the report, only about the existence and the response to. Those were the guidelines for her questioning of these witnesses. What in the report, as opposed to the document itself, did not get admitted that you feel was essential? Well, all parts of the report having to do with the employment practices of the Parlier Unified School District. And is there a place where, to follow up on Judge Smith's question, is there a place where, for the exact things you're talking about, there was an offer of proof made, Judge, here are the exact parts of the report that I would prove up so that we could determine, even if we agreed with you, that theoretically this exclusion, if it was one, was improper, where we could judge by the offer of proof what would have come in exactly to make a determination of whether, even if there were an improper exclusion, it was prejudicial? No, Your Honor. I would concede that trial counsel did not make that particular offer. Did the trial counsel make any offer of proof as to the FCMAT report? Not based on the record, Your Honor. So for the authenticating witness, I think Mr. Ovino is the focus of your arguments here. Again, whether or not the trial court was required to put on the record good cause, did trial counsel give the district court anything to work with there? I don't think we have yet an explanation from counsel as to why they did not disclose Mr. Ovino. Well, Your Honor, why the particular witness was not disclosed was not argued by trial counsel, but she did argue that there was no prejudice or the lack of disclosure was harmless. Why isn't it? Why don't the cases you cite require trial counsel to provide that good cause? Or I believe the district court, Your Honor, required an explanation as to why, not why he wasn't disclosed, but why he should let this witness testify, I believe, is the record. And the explanation was that under the four-part test, the first factor was there was a lack of prejudice to the other party or this was harmless. Or if there was any prejudice, it could have been cured. What's your best argument that in light of the way the trial went down, that it was somehow fundamentally unfair, which I think is what you have to show? My reading of the record is that essentially everything that you would have said in the report got in. Why would that be fundamentally unfair? Well, Your Honor, key witnesses for appellees testified. No. For the appellees. For example, Mr. Alvarez, Mr. Lucero, and Mr. Maldonado testified about the practices of their employment practices at PUSD. And they testified that everything was done legally and with transparency. Every employment action they took, they referred to counsel and they received a recommendation and they did this via the school district's policies and pursuant to applicable law. And you had an opportunity to rebut that? The report would have been the option. But I mean, besides the report, you could have rebutted it through testimony, right? Well, Your Honor, I was not the trial counsel for the...  So why didn't counsel for appellant in this case have every opportunity to rebut what the school district said? Well, without the investigation evidence, she had no other way to get this evidence in to rebut this testimony. I don't understand that. I mean, there are all kinds of things that could have been said without getting the actual report in. You know, you have an individual testifying. You could cross-examine that individual and show that that was not the practice. That wasn't done, I don't think. But the opportunity was there. In other words, what I'm struggling with, where's the fundamental unfairness? That's what you've got to show. Well, the fundamental unfairness is that appellees put on witnesses that testified to their habits, to their policies. Appellants were missing this smoking gun document. That applied directly on those policies. This was a... So I'm looking at ER 502, and if I'm pronouncing the name right, Acting Superintendent Lucero was testifying? Correct. And Mr. Padron is saying, you mentioned earlier there was a FCMAT report, and there were recommendations that the Board take actions, and that's when the CBO, the Chief Business Officer, was more involved. Do you recall that? I'm not sure that was my exact words, but that was what I intended to say. And the counsel didn't ask additional questions as to the substance of the report, although counsel could have, right? Well, Your Honor, the district court specifically instructed that she limit her questions. I believe Mr. Padron was in pro per, but the instructions to trial counsel was that she must limit her questions to the existence of this report and the response of the district to this particular report. You're saying that the judge said that when someone testified to the district, that that person couldn't be cross-examined based upon what had been found in the  Is that what you're saying? Yes, Your Honor. The limit of the questions were the existence of that particular report and the response of the district thereto. Well, I didn't read the record that way at all. I thought there was a full opportunity to cross-examine. They couldn't put in the report because of what my colleague mentioned in terms of the timing and so on. You've got Obino's foundational evidence and so on. But the actual content of the report could be used in the sense of what was in there to cross-examine. Isn't that correct? Your Honor, the report could not be presented in front of these witnesses. No, I said the report. But the report contains evidentiary claims that could have been referred to, right, without getting the actual report in. Your Honor, if you're referring to the specific instances contained within the report and the trial counsel to ask about that, she could have made certain questions about them. But without the evidentiary backup, these are presumably irrelevant questions because there's no evidence that these The district testifies X and counsel attacks the veracity of X. That's okay. But you're saying that's not enough? Without the evidence of these other acts, which the report found, which it did so by reviewing employment records. It did so by interviewing nominous witnesses who are identified by their occupation. You're down to about one minute. Do you want to say the balance of your time? I will, Your Honor. Thank you. Very well. Okay. So, Mr. Baxter. Correct, Your Honor. If it may please the Court, Todd Baxter on behalf of the Appellees Parlor Unified School District and Gerardo Alvarez. Talk up a little bit, if you will. Pardon? You're on TV. You need to talk up a little bit. Oh, okay. I'm sorry.  As to the FCMAT report, which is how it was being pronounced at trial, the report itself, as the Court has observed, really never came into evidence. It's part of our actually Was it offered in evidence? It was never offered into evidence. It was talked about at different points, obviously, but there's testimony. Well, the Court actually observed the fact when they were talking about the FCMAT report. The Court actually said at one point, I don't know. You guys have me at a disadvantage. I don't know what you're talking about because I've never seen this report. If the report was never offered in evidence and the judge never ruled on it, can we rule on it? Is there a final ruling? There isn't a final ruling. Is there not? No. There isn't one on the FCMAT report. And, in fact, the Court specifically said to counsel, look, I want to make myself perfectly clear. I'm not telling you you can't get it in. You can go ahead and try and get it in. But the Court also did say, given that there was no authenticator, if you try to ask somebody about what's in the report for the truth of the matters asserted, I'm probably going to sustain an objection on hearsay grounds, right? Correct. And that was one of the objections that the appellees had, that it would be hearsay. So did your clients ever proffer to the Court what the prejudice to them would be from allowing Mr. Jovino to be a late-named witness? Was there anything in the record as to what that prejudice would be? Well, there was, yes. There was an argument made at that time. Okay. So what was the argument as to what the prejudice was to allowing Mr. Jovino to be late-named to authenticate the report? I think they had said Mr. Jovino is the one who gave the defendants the report. There's no prejudice. What did your clients tell the district court was the prejudice? Well, it was not just the prejudice about Mr. Jovino. There is a prejudice, obviously, with the late disclosure of Mr. Jovino, waiting until the pretrial conference to do so, and that he was never disclosed. They admitted he was never disclosed. But the prejudice to my clients impacted not just the authentication of the report. Here's this huge report that might come in. Even though it wasn't even offered that way, it was offered as excerpts of the record and it was unsigned. But the prejudice to us was the development that we did in terms of our discovery But my question, and maybe you're answering it, but I'm not sure from the preamble that you're answering it, what did the defendants tell the district court the prejudice was? I'm not asking you to tell me de novo what the prejudice was. I'm asking what the district court was told. Here's the prejudice from Mr. Jovino. Here's the prejudice from the report coming in to this trial. It's that we never really did discovery on any of those aspects of it. Is that what you told the district court? Yes, as I recall, that was what was told the district court. It wasn't a detailed discussion about what our prejudice would be. But part of it was prejudice at this point by having this witness come in. The FCMAT report, one of the things that we brought issue to the trial court specifically, was it's just an excerpt of the report. It's not signed. I'm not sure who's going to authenticate it out of that. And on top of that, we didn't conduct any discovery, a chance to. Because once a report comes in, Your Honor, and it's into the record, this huge report, you can ask any questions you want about it, but we never had a chance to depose it. You certainly had the report. Well, yes, we had the report. And so you certainly could have conducted, if you'd wanted to, you could have conducted discovery vis-a-vis the report because it's not like you didn't have it. No, we did have the report. There's no question. And if we knew this was going to be an exhibit, Mr. Uvino was going to be testifying about it, if we knew that in advance, when you're developing your discovery plan as to how you're going to conduct yourself throughout the discovery process, if you know this is going to be an exhibit and you know these individuals are going to be testifying about it, you would ask specific questions about it to find out what they were going to testify about. Mr. Baxter, do we require the district court to – I mean, those are the arguments and reasons you might have had at trial for not wanting Mr. Uvino to testify. Do we require the district court to adopt some of those reasons for purposes of our review? There don't seem to be a lot of findings here, and one of the questions is whether we require the district court to speak to the prejudice delay, any of the other factors that we've established. I think with the Brodeur decision, I think the outline in that decision, talking about the court kind of delving into those issues before it issues a sanction, I think that probably you're looking at prejudice, the impact of that prejudice. Is it going to delay the trial? Was it willful? Was there an intentional act in time waiting until the last minute to present this evidence? And I would say that that seems to be obviously what the Brodeur decision said out of this court. At the time, though, you're talking three years earlier than that, and the actions of courts at that time were generally to, and it was the philosophy I think to, well, justify what you're going to do, why this person wasn't identified, or I'm not going to allow this person to testify. So there wasn't any specific findings on the record, and I don't know if they need specific findings now. But when the arguments were made by counsel for the school district about the prejudice, inferentially I think when the Court's looking at this, it can look at Mr. Uvino and say, well, you know, you're not giving me any justification for why. But did, I guess, the district court dealt with the undisclosed witnesses as a batch as it appears in the record? It did. So do we know that the district court made any of those findings or had in mind some of those findings? As Mr. Uvino? Yes. Just inferentially. I mean, that's the only thing I can think of, Your Honor. There isn't anything in the record where he said, you know, here's the four factors, here I find prejudice, here I find this is how, you know, you can't cure the prejudice, you can't get in and is this going to be impacting the trial, was it willful? Those were not specific findings that were found on the record, and the Court didn't necessarily do that. But I think district court. Did the district court need to do so for sanctions? I mean, we've been talking about the notice that they provided that they're trying to get the document in. Did they need something to grab onto in terms of reasons for the sanction? No. I don't think they did. I think you're at a point in this case where it's just about to go to trial. You now present Mr. Uvino for the first time, along with some other witnesses for the first time, and want to get in the FCMAT report. And it's not actually the FCMAT report. It's just excerpts from it that's an unsigned version. So the Court didn't even know what the FCMAT report was and expressed that to counsel. I'm not sure what this is. You guys have me at a disadvantage here as to what this document even is. And counsel for the plaintiff, Your Honor, decided, you know, I don't need the report in. I'm going to do it this way. And the Court allowed them to do that that way. And what did they get from part of that testimony? Part of that testimony was the report was about fiscal mismanagement during a particular period of time. It involved the Superintendent Alvarez, one of the appellees, being placed on leave because of the fiscal mismanagement. And so there was discussion about what was in the report. And I think it was up to counsel for the plaintiff's counsel to say how did you react to the report and what did you do. And part of that would be we did certain, took on certain tasks and decided to make some changes because the report indicated X, that we needed to make these changes. Mr. Lexner, I guess maybe you can help me understand the local practice or local rules in this instance. But is there any practice usually in terms of pretrial disclosures and pretrial orders to generically list any authenticating witness? Well, I think the Court's general order that comes out at the beginning of every case I've ever had in the Eastern District certainly details for the parties Rule 26, this is what you have to produce. And if you supplement, if you need to supplement, supplement. And I can't tell you. I have one case where I've supplemented ten times because we get more information and we add people onto it and you have to keep supplementing these reports to let people know that you're going to rely on these witnesses, you're going to rely on certain documents when it comes time for trial. It's not a trial by ambush. And that's what I think Rule 26, the whole focus of Rule 26 is. Just putting aside Mr. Iovino for the minute, was the report itself by acronym or in any other way ever mentioned in the plaintiff's initial disclosures or any supplements? Was there any reference to the report? You mean the FCMAT report? Yes. No. Okay. Not that I remember. Following up on that though, you apparently at some point got a copy of the report. Is that correct? Yes, at the time it was issued we would have gotten a copy of the report. So you had that. So if you had wanted to, you could have said, make available for deposition the author of the report and then gone through and asked questions about the report if you had wanted to do that, right? Well, if we wanted to move forward in that way it was certainly going to disrupt the trial. I'm just saying it could have been done. My impression is what you're saying is the other side just didn't emphasize that. They didn't talk about it. They wanted to go a different way and so you went to where they were going. Is that right? Essentially, yes. You're going in the direction of you've got a Fourth Amendment complaint. It has all sorts of causes in it. You're moving in that direction with what they're doing. That's how you're doing your discovery and then at the pre-trial conference you pull out the FCMAT report. Of course, the district knew about it because folks put it together. Like you said, it's a trial by ambush from your perspective because you thought they were going to go a different way. Yes. Yes. It's exactly what I would say, Your Honor, is that it was our intent or our view that this is we were prepared for trial. We were prepared for certain documents that had been identified. We had to post to people about those documents and talk with the different witnesses that we thought they were going to have and they went in a completely different direction, emphasizing the FCMAT report. And the FCMAT report was never introduced into evidence at any point in time. Not even the exhibit that they had put together that the excerpted part of it was never introduced into evidence, never presented to the trial court. It was never part of the record. And we do have our motion to strike that we want the FCMAT report, the entirety of it, stricken from the record because that was never presented at any point in time to the district court. And the district court never even had a chance to consider it. Mr. Baxter, why shouldn't the district court have intervened at the end of the closing arguments with respect to the statements as to the wealth status of the plaintiffs? Well, first of all, there was no objection to it. And as a matter of fact, they kind of built on the kind of the theme that counsel was using, this entitlement theme. One of the parties actually built on that and talked about the entitlement to your constitutional rights. So there wasn't any objection to it. There was nothing that was raised for the trial court to consider even at that time because they never raised any objection to it. It's not an issue of when you look at counsel's comments, the law is such that it has to basically permeate the whole case. This is just a statement at the end. It had nothing to do with race. It was basically argument of counsel that, you know, don't give them a big award of damages because it's not warranted under these circumstances. That's all the statement was. The court made a specific finding that it wasn't a racially charged comment, right? Yes. I believe so in the order on denying the motion for new trial, correct, that the court said that it was not a racially charged comment. And it's not. It didn't have anything to do with race. It was pretty – some people may not like the wording of it, but it was pretty much a straightforward don't give them an award of damages under these circumstances because it wasn't warranted. And that's really what the argument is. It's probably the type of argument that goes on a lot throughout the United States in every courtroom. It may, but I think, you know, there's some questionable wording in there. What they should do is go get a job like the rest of us. I understand. I mean – It's a little strong. That's not the word I would use, but –  I will – I can report that back to my partner who is the one who tried the case and made the comment. Is there anything in the record other than the closing arguments that could be construed as racially stereotypical or inappropriate? No. No. It was simply that statement at the end of the closing argument. And again, there was no objection to that statement. Nothing for the court to deal with. And in fact, one of the parties who's not appealing here got up immediately after as part of his closing, his rebuttal, and simply said arguments of counsel are not evidence and wanted to dissuade the jury that anything that Mr. Aller said had any bearing on any of the evidence in the case simply because those were just simply his arguments, Your Honor. I only have 30 seconds left unless the court has any – You can use it or not as you see fit. I will submit unless the court has any further questions. The court never objects to people who finish early. Thank you, Your Honor. Very well. Thank you very much. Mr. Lee, you have a little rebuttal time. Your Honors, on the issue of whether this was a trial by ambush or surprise, this witness was disclosed four months prior to trial. A simple order of a deposition of this authenticating witness would have had no disruption to trial. They could have deposed this person. They could have – he could have authenticated the witness. I get back to a question I asked earlier. It's been established by your admissions and what I understand in the record that the report was never offered in evidence. There was never a ruling that it was excluded. Therefore, my question is how can we consider it? It's not a final ruling. How can we consider it at all? Well, it is final as to at least Jim Uvino as the – As to what? As to Mr. Uvino as the authenticating witness. Okay. As to his being the authenticator, right? And also all nondisclosed witnesses for that matter, Your Honor. It was in a broad stroke. And as to counsel's position that the court need not make any findings on that basis, the liberty stands for the opposite of that, which is the – Time is up. May I ask my colleagues, does either have additional questions? I think not. Thanks to both counsel for your argument in the case. The case just argued is submitted. Thank you.
judges: SMITH, BENNETT, JOHNSTONE